**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JEFFREY CLARKE,** | ) | **Case No.** |
| **Plaintiff,** | ) | |
| **v.** | ) | **REQUEST FOR JURY TRIAL** |
| **SURDEX CORPORATION,** | ) | |
| **and** | ) | |
| **HOFFMANN AVIATION SERVICES, INC.,** | ) | |
| **and** | ) | |
| **BOWMAN CONSULTING GROUP, LTD.,** | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff Jeffrey Clarke ("Plaintiff") hereby states and alleges as follows for his claims against the above-named defendants (collectively, "Defendants"):

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Jeffrey Clarke is a citizen and resident of the State of Georgia.

2. Defendant Surdex Corporation ("Surdex") is a Missouri corporation with its principal place of business in Chesterfield, Missouri. Surdex can be served through its Missouri Registered Agent: Legalinc Corporate Services Inc., 12747 Olive Blvd, Suite 300A, Saint Louis, Missouri 63141.

3. Defendant Hoffmann Aviation Services, Inc. ("Hoffmann") is a Missouri corporation with its principal place of business in Chesterfield, Missouri. Hoffmann can be served through its Missouri Registered Agent: Legalinc Corporate Services Inc., 12747 Olive Blvd, Suite

300A, Saint Louis, Missouri 63141.

4. Defendant Bowman Consulting Group, Ltd. ("Bowman") is a Delaware corporation with its principal place of business in Reston, Virginia. Bowman conducts business throughout the United States, including Missouri. Bowman can be served through its Missouri Registered Agent: Legalinc Corporate Services Inc., 12747 Olive Blvd, Suite 300A, Saint Louis, Missouri 63141.

5. Defendants own and operate a flight operations facility and hangar located in Chesterfield, Missouri, at the Spirit of St. Louis Airport (the "Chesterfield Facility"). At all times relevant, the Chesterfield Facility served as Defendants' primary business location for their aerial mapping and surveying business.

6. Plaintiff worked for Defendants as an aerial survey pilot and reported out of the Chesterfield Facility, received his flight assignments and operational instructions from personnel based at the Chesterfield Facility, and reported to Defendants' chief pilot, schedulers, and other staff who were based at the Chesterfield Facility.

7. This Court has personal jurisdiction over Defendants because each Defendant has substantial contacts with the State of Missouri, which are purposefully directed to the State of Missouri, through their joint operation of the Chesterfield Facility and employment of survey pilots, including Plaintiff, in Missouri. Moreover, Surdex and Hoffmann maintain their respective principal places of business in Chesterfield, Missouri.

8. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for Plaintiff's claims asserted under federal law, including the Americans with Disabilities Act, as amended ("ADAAA"), 42 U.S.C. § 12101 *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

9. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims in this action that they form part of the same case or controversy.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants conduct business in this District, Surdex and Hoffmann maintain their principal place of business in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## RELATION OF ENTITIES

11. For years, Surdex operated as an independent company and employed Plaintiff as an aerial survey pilot.

12. In around early 2024, Bowman announced its intent to acquire Surdex.

13. To carry out the acquisition, Bowman created a separate entity – Bowman Atlas LTD. – which it merged with Surdex in April 2024.

14. On or about April 3, 2024, the parties filed "Articles of Merger" with Missouri's Secretary of State that identified Surdex as the "surviving corporation" of the merger between Bowman Atlas LTD. and Surdex.

15. Through this process, Bowman acquired all outstanding shares of Surdex, which survived the merger as Bowman's wholly owned subsidiary and continued operating its aerial mapping and surveying business.

16. In the early stages of the acquisition, Defendants transitioned Surdex's workforce, including Plaintiff, to a third entity: Hoffmann Aviation Services, Inc. ("Hoffmann").

17. Hoffmann served as the employing entity for the survey pilots during the transition, allowing the aerial mapping and surveying operation to continue without interruption.

18. After the acquisition, Defendants transitioned their survey pilots to Bowman, effective on or about December 2, 2025. Defendants issued survey pilots new offers of employment and onboarded them as Bowman employees around this time.

19. Regardless of whether Defendants characterized the survey pilots as being formally employed by Surdex, Hoffmann, and/or Bowman, Defendants' survey pilots continued flying the same aircraft, on the same schedules, for the same customers, under the same operational control, and under the same compensation structure. The flight operations business never ceased operating and remained under the same management and control the entire time.

20. To this day, Surdex continues operating the aerial mapping and surveying business as Bowman's wholly owned subsidiary, with survey pilots employed by Bowman.

21. During the period relevant to Plaintiff's claims, Surdex, Hoffmann, and Bowman shared management personnel, maintained interrelated operations, and exercised centralized control over the terms and conditions of the survey pilots' employment, including Plaintiff's employment. Bowman owned Surdex, while Hoffmann served as the nominal employer of the survey pilots performing work for the continuing aerial mapping and surveying operation.

22. Surdex, Hoffmann, and Bowman all exercised control over survey pilots' work during Plaintiff's employment, including by exercising control over flight operations, scheduling, and compensation policies.

23. Accordingly, Surdex, Hoffmann, and Bowman operated as a single integrated enterprise and/or were joint employers with respect to Plaintiff.

## FACTS COMMON TO ALL COUNTS

24. Defendants operate an aerial mapping and surveying business based at the Chesterfield Facility. Through this operation, Defendants provide aerial imagery, mapping, and

data collection services to commercial and governmental clients throughout the United States, including federal agencies, state and local governments, and private customers.

25. Defendants maintain a fleet of single-engine, multi-engine, and turboprop aircraft and employ survey pilots to fly those aircraft on mapping and surveying missions. Survey pilots generally work alongside sensor operators, who operate the cameras and data collection equipment aboard the aircraft.

26. Defendants coordinate flight assignments for their survey pilots and sensor operators through personnel based at the Chesterfield Facility.

***Plaintiff's Employment Background***

27. Surdex hired Plaintiff in or around July 2018 as a Survey Pilot III. In this position, Plaintiff piloted turboprop aircraft on aerial mapping and surveying missions throughout the country.

28. Although Plaintiff lived in Georgia and performed flight assignments throughout the United States, he reported out of the Chesterfield Facility. Plaintiff received assignments and operational instructions from personnel based there and regularly returned to the Chesterfield Facility in connection with aircraft maintenance and flight operations.

29. Plaintiff's wages were subject to Missouri state income tax throughout his employment with Defendants.

30. In connection with Bowman's acquisition of Surdex in April 2024, Plaintiff and the other survey pilots were transferred to Hoffmann. Following this transfer, Plaintiff continued performing the same survey-pilot work for the continuing aerial mapping and surveying operation, using the same aircraft and reporting through the existing flight operations structure.

31. By 2025, Plaintiff was among the operation's most senior survey pilots and held the certifications necessary to fly its turboprop aircraft.

***Plaintiff's Work-related Injury and Treatment***

32. In around early June 2025, Plaintiff injured his abdomen while lifting a heavy item in the course of his work at the Chesterfield Facility. Plaintiff experienced severe abdominal pain and was later diagnosed with bilateral inguinal hernias.

33. Plaintiff promptly reported his injury to Chip Shanle, Director of Flight Operations, and requested medical treatment through Defendants' workers' compensation carrier.

34. By June 2, 2025, Defendants' human resources personnel were aware of Plaintiff's injury. That day, Rachael Donaldson emailed Plaintiff about obtaining medical care and copied Shanle and Erin Friend, Defendants' Human Resources Coordinator.

35. Donaldson told Plaintiff that his injury might not qualify for workers' compensation coverage and provided information about local medical facilities where he could seek treatment. Plaintiff responded that he was heading to urgent care.

36. Plaintiff continued working, but his abdominal pain persisted and worsened over the following months.

37. In late August 2025, Plaintiff met with Shanle at the Chesterfield Facility and explained that his pain had become so severe that he no longer felt safe flying aircraft. Plaintiff told Shanle that he needed to stop working until he could obtain treatment.

38. Plaintiff stopped working following that meeting.

39. Although Plaintiff had reported the injury in June, a formal injury report was not completed until late August. The report identified June as the time of the injury.

40. Friend assisted Plaintiff with submitting a workers' compensation claim and, in around September 2025, Defendants' workers' compensation carrier denied coverage on the grounds that Plaintiff's injury was not work related.

41. Following the denial, Friend instructed Plaintiff to obtain treatment on his own and apply for leave under the Family and Medical Leave Act ("FMLA").

***Plaintiff's FMLA Leave***

42. On September 19, 2025, Friend informed Plaintiff that he was eligible for FMLA leave and short-term disability benefits. She provided the forms for Plaintiff's physician to complete, along with his job description and instructions for obtaining leave.

43. Although Friend sent these communications from her Surdex email address, her signature block identified her as "Human Resources Coordinator | Bowman," listed her location as Chesterfield, Missouri, and provided her Bowman email address, erin.friend@bowman.com.

44. Friend handled Plaintiff's leave application, medical documentation, and return-to-work communications throughout the events described below while representing herself as a Bowman employee.

45. Plaintiff submitted the requested medical documentation to apply for FMLA leave.

46. Thereafter, on September 29, 2025, Friend confirmed that Plaintiff's FMLA leave was approved for eight to ten weeks based on his physician's certification.

47. Friend also provided Plaintiff a Return-to-Work Capabilities form and instructed Plaintiff to have his physician complete it before returning to work.

48. Plaintiff took FMLA leave beginning on or about October 1, 2025 to obtain treatment for his hernias.

49. On October 20, 2025, Plaintiff underwent surgery through the Department of Veterans Affairs.

***Plaintiff's Attempted Return to Work***

50. While Plaintiff was on leave, Defendants proceeded with transferring the survey pilots from Hoffmann to Bowman. The transition called for the pilots' employment with Hoffmann to end on December 1, 2025, and their employment with Bowman to begin on December 2, 2025.

51. Plaintiff did not receive a Bowman offer of employment during this transition.

52. In late November and early December 2025, Friend requested additional medical documentation to support Plaintiff's continued need for leave.

53. Plaintiff sought the requested documentation from his treating providers but encountered delays in obtaining completed forms.

54. Plaintiff's physician ultimately released him to return to work without restrictions effective December 3, 2025, and Plaintiff provided the completed Return-to-Work Capabilities form to Friend on December 15, 2025.

55. That day, Friend acknowledged that Plaintiff had been released to return without restrictions. Nevertheless, she told Plaintiff that his absences after December 3 were unauthorized unless he submitted additional medical certification supporting continued leave.

56. Friend warned Plaintiff that he could face discipline, including termination, if he did not provide that certification by December 19, 2025.

57. Plaintiff responded by asking how he could return to work when he had not received an offer from Bowman. He explained that the announced transition contemplated the end of his Hoffmann employment on December 1, but Defendants had not completed his transition to Bowman.

58. By this time, Friend was communicating with Plaintiff exclusively from her Bowman email address. Her signature block continued to identify her as Bowman's Human Resources Coordinator in Chesterfield, Missouri.

59. On December 16, 2025, Plaintiff requested clarification of his approved leave dates and disputed Friend's characterization of his absences as unauthorized. Plaintiff explained that he understood his leave had been approved through December 20, 2025.

60. Friend responded that his approved leave extended through December 9, 2025. She also extended the deadline for submitting additional medical certification to January 2, 2026.

61. Later on December 16, 2025, Plaintiff expressly told Friend that he was no longer requesting additional FMLA leave. He reminded her that he had provided a medical release allowing him to return without restrictions and requested instructions for reinstatement, including a confirmed return-to-work date.

62. On December 18, 2025, Plaintiff again contacted Friend and requested reinstatement to his original position or an equivalent position. He explained that he had been released to return effective December 3 but had not been returned to work.

63. Friend responded that she was "meeting with the scheduling team" that day to discuss Plaintiff's return-to-work date and would contact him when she had more information.

64. Despite Plaintiff's medical release and repeated requests to return, Defendants did not reinstate him or provide him with a date to resume work.

***Plaintiff's Wrongful Discharge***

65. On January 9, 2026, Friend sent Plaintiff a letter terminating his employment.

66. The letter stated that, because Plaintiff had submitted his Return-to-Work Capabilities form on December 15, 2025, and *Hoffmann* had no open positions at that time, his termination was effective December 16, 2025.

67. Friend thus made Plaintiff's termination retroactive to two days before she told him that she was meeting with the "scheduling team" to arrange his return to work.

68. Although Defendants claimed that *Hoffmann* had no available positions as of December 15, 2025, their aerial mapping and surveying operation continued at the Chesterfield Facility through the other survey pilots who had all been transferred to Bowman.

69. Defendants refused to transfer Plaintiff to Bowman with the other survey pilots while he was on approved FMLA leave and then terminated his employment when he sought to return from leave.

70. At the time of his discharge, Plaintiff had been medically released to return without restrictions and had repeatedly requested reinstatement.

71. Defendants discharged Plaintiff because of his disability and/or perceived disability, his request for and use of FMLA leave, and his exercise of workers' compensation rights.

***Bowman's Refusal to Hire Plaintiff***

72. While Plaintiff was on medical leave, Bowman offered employment to the other survey pilots as part of the December 2025 transition.

73. Bowman did not offer employment to Plaintiff, despite his years of experience performing survey-pilot work for the continuing operation.

74. After receiving his medical release, Plaintiff repeatedly requested that Defendants return him to work and complete his transition to Bowman, yet Bowman did not onboard Plaintiff along with the rest of the survey pilots.

75. In January and early February 2026, Plaintiff filed charges of discrimination against Surdex, Hoffmann, and Bowman related to his exclusion from the transition to Bowman.

76. On or about February 11, 2026, Plaintiff saw an opening for a "Survey Pilot II / A&P Mechanic" position on Bowman's website. The posting identified Chesterfield, Missouri, as the position's location.

77. Plaintiff applied for the position through Bowman's online application portal.

78. The position included aerial survey work of the kind Plaintiff had performed for more than seven years. Plaintiff possessed substantial experience and the pilot certifications necessary to perform that work.

79. On April 8, 2026, Bowman's recruitment team notified Plaintiff that his application had been rejected without Plaintiff having been interviewed.

80. Bowman knew of Plaintiff's medical condition, medical leave, and requests to return to work through the personnel who administered Plaintiff's leave.

81. Bowman also knew that Plaintiff had filed charges of discrimination against Defendants before rejecting his application.

82. Bowman refused to employ Plaintiff because of his disability and/or perceived disability, the charges of discrimination he had filed against Bowman and the other Defendants, and his use of FMLA leave.

83. All actions or inactions of or by Defendants occurred by and through their agents, servants, or employees, as set forth herein.

***Conditions Precedent***

84. On or about January 21, February 3, and April 23, 2026, Plaintiff duly filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Missouri

Commission on Human Rights ("MCHR"), alleging Defendants engaged in the discriminatory actions that are being raised in this lawsuit, or alternatively, that all conduct alleged herein would have arisen from the investigation of such Charges of Discrimination.

85. The EEOC and MCHR issued Plaintiff notices of his right to sue and this action is being brought within ninety (90) days from the issuance of such notices.

**COUNT I**
**DISABILITY DISCRIMINATION IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT AS AMENDED**
**(DISPARATE TREATMENT)**

86. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of his Complaint as though fully stated herein.

87. Plaintiff suffered from medical impairments that substantially limited one or more of his major life activities, including his ability to walk, stand, ambulate, sleep, and maintain employment.

88. Defendants believed that these physical impairments limited Plaintiff from additional major activities and would do so for much longer than they actually did.

89. In reality, Plaintiff could at all times perform the essential job functions of his position with reasonable accommodation including but not limited to a reasonable period of leave.

90. At all times, Plaintiff was qualified for his former position and/or other positions available during his employment.

91. Defendants took adverse action against Plaintiff, including but not limited to refusing to accommodate his disabilities and terminating his employment.

92. Bowman subjected Plaintiff to separate adverse actions by failing to hire Plaintiff in connection with the initial workforce transition and when Plaintiff applied for an open position for which he was qualified.

93. Plaintiff's disabilities and/or perceived disabilities were a motivating factor in Defendants' adverse employment actions.

94. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and reduced employment opportunities.

95. The conduct of Defendants, as set forth above, was intentionally harmful to Plaintiff and done without just cause.

96. Defendants acted with knowledge that their actions were in violation of federal law and infringed upon Plaintiff's federally protected rights.

WHEREFORE, Plaintiff prays for judgment against Defendants for back pay and lost benefits; compensatory damages in an amount fair and reasonable; punitive damages; equitable relief in the form of front pay if reinstatement is not feasible; Plaintiff's costs and expenses incurred herein; Plaintiff's attorneys' fees; and for all other relief deemed just and proper by this Court.

**COUNT II**
**DISABILITY DISCRIMINATION IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT AS AMENDED**
**(FAILURE TO ACCOMMODATE)**

97. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of his Complaint as though fully stated herein.

98. Plaintiff suffered from medical impairments that substantially limited one or more of his major life activities, including his ability to walk, stand, ambulate, sleep, and maintain employment.

99. Defendants believed that these physical impairments limited Plaintiff from additional major activities and would do so for much longer than they actually did.

100. In reality, Plaintiff could at all times perform the essential job functions of his position with reasonable accommodation including but not limited to a reasonable period of leave.

101. At all times, Plaintiff was qualified for his former position and/or other positions available during his employment.

102. Defendants failed to accommodate Plaintiff's disability by excluding him from the workforce transition while he was on medical leave and failing to preserve an available position to which he could return following that leave.

103. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and reduced employment opportunities.

104. The conduct of Defendants, as set forth above, was intentionally harmful to Plaintiff and done without just cause.

105. Defendants acted with knowledge that their actions were in violation of federal law and infringed upon Plaintiff's federally protected rights.

106. Plaintiff is also entitled to recover all his costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendants for back pay and lost benefits; compensatory damages in an amount fair and reasonable; punitive damages; equitable relief in the form of front pay if reinstatement is not feasible; Plaintiff's costs and expenses incurred herein; Plaintiff's attorneys' fees; and for all other relief deemed just and proper by this Court.

**COUNT III**
**RETALIATION IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT AS AMENDED**

107. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as though fully stated herein.

108. Plaintiff suffered from medical impairments that substantially limited one or more of his major life activities, including his ability to walk, stand, ambulate, sleep, and maintain employment.

109. Plaintiff engaged in activity protected by the ADAAA including but not limited to requesting reasonable accommodations for his disabilities and filing Charges of Discrimination with the EEOC against Defendants.

110. Defendants took adverse action against Plaintiff, including but not limited to terminating his employment.

111. Bowman subjected Plaintiff to separate adverse actions by failing to hire Plaintiff in connection with the initial workforce transition and when Plaintiff applied for an open position for which he was qualified.

112. Plaintiff's protected activities under the ADAAA were a motivating factor in Defendants' adverse employment actions.

113. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered past and future pecuniary losses.

WHEREFORE, Plaintiff prays for judgment against Defendants for equitable relief in the form of reinstatement to his former position or a substantially similar position with Defendants; back pay and front pay, if reinstatement is not possible; Plaintiff's costs and expenses incurred herein; Plaintiff's attorneys' fees; and for all other relief deemed just and proper by this Court.

**COUNT IV**
**DISCRIMINATION/RETALIATION IN VIOLATION OF**
**THE FAMILY AND MEDICAL LEAVE ACT**

114. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as though fully stated herein.

115. At all times relevant, Defendants were covered employers under the FMLA and collectively employed at least fifty employees for each working day during at least twenty calendar weeks in the current or preceding calendar year.

116. Plaintiff applied for and received FMLA leave based on his own serious health condition while working for Defendants.

117. Plaintiff engaged in protected activity under the FMLA when he applied for and took leave under the FMLA.

118. Defendants took adverse action against Plaintiff, including, but not limited to terminating his employment.

119. Bowman subjected Plaintiff to separate adverse actions by failing to hire Plaintiff in connection with the initial workforce transition and when Plaintiff applied for an open position for which he was qualified.

120. Defendants' adverse actions were motivated by Plaintiff's exercise of his rights under the FMLA.

121. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered past and future pecuniary losses.

122. Defendants' actions were not taken in good faith and were without reasonable grounds, entitling Plaintiff to an award of liquidated damages.

WHEREFORE, Plaintiff prays for judgment against Defendants for back pay and lost benefits; liquidated damages; equitable relief in the form of front pay if reinstatement is not feasible; Plaintiff's costs and expenses incurred herein; Plaintiff's attorneys' fees; and for all other relief deemed just and proper by this Court.

## COUNT V
## UNLAWFUL INTERFERENCE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

123. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as though fully stated herein.

124. Plaintiff applied for and received FMLA leave based on his own serious health condition.

125. Defendants refused to transition Plaintiff to Bowman while he was on approved FMLA leave.

126. After Plaintiff provided his medical release and requested reinstatement, Defendants refused to restore him to his former position or an equivalent position and instead terminated his employment.

127. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered past and future pecuniary losses.

128. Defendants' actions were not taken in good faith and were without reasonable grounds, entitling Plaintiff to an award of liquidated damages.

WHEREFORE, Plaintiff prays for judgment against Defendants for back pay and lost benefits; liquidated damages; equitable relief in the form of front pay if reinstatement is not feasible; Plaintiff's costs and expenses incurred herein; Plaintiff's attorneys' fees; and for all other relief deemed just and proper by this Court.

**COUNT VI**
**RETALIATION BASED ON THE EXERCISE OF WORKERS' COMPENSATION RIGHTS IN VIOLATION OF R.S.MO. § 287.780**

129. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of his Complaint as though fully stated herein.

130. Plaintiff was injured while in the course and scope of his employment with Defendants.

131. Plaintiff exercised rights under Workers' Compensation Laws of Missouri, including, but not limited to, reporting a work-related injury and seeking medical treatment.

132. Defendants took adverse employment actions against Plaintiff, including, but not limited to terminating his employment following his report of a workplace injury.

133. Plaintiff's exercise of rights under Missouri Workers' Compensation law actually played a role in and had a determinative influence on the adverse employment actions taken against Plaintiff.

134. The justifications for Plaintiff's discharge are false and/or pretextual.

135. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and reduced employment opportunities.

136. The conduct of Defendants, as set forth above, was intentionally harmful to Plaintiff and done without just cause.

WHEREFORE, Plaintiff prays for judgment against Defendants for back pay and lost benefits; compensatory damages in an amount fair and reasonable; punitive damages; equitable

relief in the form of front pay if reinstatement is not feasible; Plaintiff's costs and expenses incurred herein; and for all other relief deemed just and proper by this Court.

**COUNT VII**
**DISABILITY DISCRIMINATION IN VIOLATION OF**
**THE MISSOURI HUMAN RIGHTS ACT**

137. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of his Complaint as though fully stated herein.

138. Plaintiff suffered from medical impairments that substantially limited one or more of his major life activities, including his ability to walk, stand, ambulate, sleep, and maintain employment.

139. Defendants believed that these physical impairments limited Plaintiff from additional major activities and would do so for much longer than they actually did.

140. In reality, Plaintiff could at all times perform the essential job functions of his position with reasonable accommodation including but not limited to a reasonable period of leave.

141. At all times, Plaintiff was qualified for his former position and/or other positions available during his employment.

142. Defendants took adverse action against Plaintiff, including but not limited to refusing to accommodate his disabilities and terminating his employment.

143. Bowman subjected Plaintiff to separate adverse actions by failing to hire Plaintiff in connection with the initial workforce transition and when Plaintiff applied for an open position for which he was qualified.

144. Plaintiff's disability and/or perceived disability actually played a role in Defendants' adverse employment decisions and had a determinative influence on those decisions.

145. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and reduced employment opportunities.

146. The conduct of Defendants, as set forth above, was intentionally harmful to Plaintiff and done without just cause.

WHEREFORE, Plaintiff prays for judgment against Defendants for back pay and lost benefits; compensatory damages in an amount fair and reasonable; punitive damages; equitable relief in the form of front pay if reinstatement is not feasible; Plaintiff's costs and expenses incurred herein; Plaintiff's attorneys' fees; and for all other relief deemed just and proper by this Court.

**COUNT VIII**
**RETALIATION IN VIOLATION OF**
**THE MISSOURI HUMAN RIGHTS ACT**
**(Against Bowman Only)**

147. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of his Complaint as though fully stated herein.

148. Plaintiff engaged in activities protected by the MHRA including but not limited to filing Charges of Discrimination with the Missouri Commission on Human Rights against Defendants.

149. Bowman subjected Plaintiff to adverse actions by failing to hire Plaintiff when he applied for an open position for which he was qualified.

150. Plaintiff's protected activities under the MHRA were a motivating factor in Bowman's adverse employment actions.

151. As a direct and proximate result of Bowman's unlawful conduct, Plaintiff suffered lost wages and benefits, emotional distress, humiliation, inconvenience, and reduced employment opportunities.

WHEREFORE, Plaintiff prays for judgment against Defendant Bowman for back pay and lost benefits; compensatory damages in an amount fair and reasonable; punitive damages; equitable relief in the form of front pay if reinstatement is not feasible; Plaintiff's costs and expenses incurred herein; Plaintiff's attorneys' fees; and for all other relief deemed just and proper by this Court.

**DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury on all Counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully submitted,

*/s/ John F. Doyle*

Daniel L. Doyle, MO Bar No. 37305
John F. Doyle, MO Bar No. 66626
DOYLE & BRUCE LLC
748 Ann Avenue
Kansas City, Kansas 66101
(913) 543-8558
(913) 543-3888 Facsimile
Dan@KCLaw.com
John@KCLaw.com

***Counsel for Plaintiff***